IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SUSAN STURDIVANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-10-277-L |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

In her application filed May 16, 2007, Plaintiff alleged that she became disabled on November 2, 2000, due to multiple impairments and symptoms, including fibromyalgia,

irritable bowel syndrome, acid reflux, right hand numbness, migraine headaches, "sour stomach," cramping in the neck and shoulders, fatigue, and memory problems. (TR 123). In reports filed with the agency, Plaintiff stated she was terminated from her job on June 27, 2005, after requesting that her doctor remove her from work due to right hand numbness. (TR 124). Plaintiff stated that she had a high school education and vocational training, including medical transcription training completed in October 2005. (TR 135, 152). Plaintiff described her usual daily activities, including caring for her teen-aged son and pets, and stated she used a hand brace but no other assistive device. (TR 137-143).

Plaintiff's application was denied initially and on reconsideration. (TR 58, 59). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge McLean ("ALJ") on November 14, 2007. (TR 18-56). At this hearing, Plaintiff appeared with her attorney and testified, and a vocational expert ("VE") also testified. Following the hearing, the ALJ issued a decision in September 2008 in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act as she retained the functional capacity ("RFC") to perform three of her previous jobs. The Appeals Council declined to review this decision. (TR 2-5). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not

substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §404.1520(b)-(f) (2010); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the

burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. New Evidence

In her brief, Plaintiff asserts that she submitted new medical evidence to the Appeals Council which was not included in the record. She describes this new evidence as (1) a report from a rheumatologist dated March 5, 2009, (2) medical records spanning November 2007 through March 2009 from Dr. Fried, Plaintiff's treating physician, and (3) a report from Dr. Wasemiller dated December 2008 concerning the results of electromyography ("EMG") testing of Plaintiff. Plaintiff contends that the matter should be remanded to the Commissioner for consideration of this new evidence.

In the Appeals Council's January 2010 decision, the Appeals Council addressed the December 2008 report from Dr. Wasemiller. The Appeals Council declined to consider this new evidence submitted by Plaintiff because it post-dated the ALJ's decision. This decision is consistent with the regulations, 20 C.F.R. § 404.970(b), which requires that the Appeals Council evaluate additional evidence submitted to it only "if it relates to the period on or before the date of the [ALJ's] hearing decision."

Sentence six of 42 U.S.C. § 405(g) states, in relevant part: "The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause

for the failure to incorporate such evidence into the record in a prior proceeding . . ." With respect to the "new" evidence described by Plaintiff, Plaintiff has not shown that the rheumatologist's report, Dr. Wasemiller's report, or any of the records of Dr. Fried that post-date the ALJ's decision are material as the evidence is not chronologically relevant to the Commissioner's decision pursuant to 20 C.F.R. § 404.970(b).[1]

Moreover, Plaintiff has failed to demonstrate the materiality of any of Dr. Fried's records that pre-date the ALJ's decision or good cause for her failure to submit any such records to the ALJ prior to the ALJ's decision. Thus, Plaintiff's request for a remand to the Commissioner for consideration of this new evidence should be denied.

IV. Credibility

At the fourth step of the evaluation process, the ALJ is required to determine whether the claimant retains the RFC to perform the requirements of all past relevant work. The claimant bears the burden of proving an inability to perform the duties of the claimant's past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993). The assessment

[1]The Appeals Council's decision does not indicate that it received the March 2009 report of the rheumatologist or the records of Dr. Fried allegedly submitted by Plaintiff. Thus, the ALJ cannot be faulted for failing to address this "new" evidence.

of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

Plaintiff contends that the ALJ erred in finding that her testimony and statements were not entirely credible. In the ALJ's decision, the ALJ found at step two that Plaintiff had severe impairments due to fibromyalgia resulting primarily in chronic pain and muscle spasms in her neck, shoulders, and upper extremities, and anxiety. (TR 14). At step four, the ALJ found that despite these impairments Plaintiff had the residual functional capacity ("RFC") to perform semi-skilled, light work that does not involve more than occasional postural changes (climbing, balancing, kneeling, stooping, crawling, or crouching) and does not require more than simple to detailed, or not complex, job instructions. (TR 14).

In connection with this RFC assessment, the ALJ's decision reflects consideration of the credibility of Plaintiff's testimony and statements in the record concerning her pain and other symptoms. The ALJ made specific findings as to the credibility issue. With respect to Plaintiff's allegations of severe, disabling pain, muscle spasms, and episodes of gastrointestinal disorders, the ALJ found:

> Although the claimant's ongoing medical treatments and

> medications therapy have not totally resolved her symptoms and sporadic episodes of exacerbation, there is no showing that she has experienced frequent or prolonged episodes of acute pain, muscles [sic] spasm, or gastrointestinal disorders requiring hospital admissions, recurrent emergency room or other crisis treatments, or extensive physical therapy or other rehabilitative therapies. The claimant is not shown to have developed complications resulting in considerable joint swelling, boney deformity, loss of motor strength and functions, loss of flexibility, loss of sensory functions, loss [of] reflexes, or reduction of peripheral pulsation.

(TR 15). With respect to Plaintiff's allegations of disabling symptoms as a result of mental impairments, the ALJ found:

> [T]he claimant has been followed with Valium to treat her anxiety disorders . . . . Although this medication therapy has not totally resolved her symptoms and has resulted in some sporadic episodes of exacerbation, there is no showing that she has experienced frequent or prolonged episodes of acute anxiety requiring hospital admissions, recurrent emergency room or other crisis treatments, or ongoing psychiatric treatments and counseling. Contrary to the claimant's denial, there is some evidence of marijuana and other substance abuse. There is no showing that the claimant has sought or required treatment for depression or any other significant psychiatric disorder. Nor is she described as exhibiting considerable deficits of mental, cognitive, intellectual, emotional, or social functions. The undersigned is convinced that the severity of the claimant's anxiety has imposed mild restrictions of activities of daily living; mild difficulties of maintaining social functions; moderate difficulties of maintaining concentration, persistence, and pace; and no repeated or extended episodes of decompensation and deterioration in work or work-like settings.

(TR 15-16).

Plaintiff contends that the credibility decision is not supported by substantial evidence in the record because (1) the ALJ did not expressly consider Plaintiff's daily living activities;

(2) there is no evidence in the record that Plaintiff is malingering or exaggerating; (3) Plaintiff has repeatedly and consistently sought medical treatment; and (4) Plaintiff testified at the hearing that she had undergone physical therapy on three occasions, each lasting about six weeks.

Although Plaintiff testified that she had undergone three rounds of physical therapy, Plaintiff's testimony regarding physical therapy appears to have been directed to the time period preceding the date on which she alleged she became disabled. Moreover, Plaintiff did not describe the nature of the physical therapy she received, and she admitted that the physical therapy treatments were helpful. (TR 40). With respect to the ALJ's discussion of her daily activities, the ALJ acknowledged that Plaintiff's anxiety impairment had resulted in mild restrictions of daily living activities. Plaintiff does not point to any evidence in the record that is not consistent with this finding. Further, the ALJ's decision includes a summary of Plaintiff's relevant medical treatment. Plaintiff does not point to any evidence in the record that is not consistent with this summary.

The factors described in Hargis v. Sullivan, 945 F.2d 1482 (10th Cir. 1991), as relevant to the ALJ's credibility determination include

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Id. at 1489. The fact that the ALJ focused on one or more of these factors does not render the ALJ's credibility decision faulty or unsupported by substantial evidence in the record. Here, the ALJ focused on the consistency between Plaintiff's subjective statements and the objective medical evidence in the record.

The reasons provided by the ALJ for her credibility determination are well supported by the record. Plaintiff's medical treatment between 2003 and the date of the decision was provided by Indian Health Services at various clinics. Even though Plaintiff could obtain medical treatment upon request at these clinics, the record shows she only infrequently sought medical treatment, and almost the entirety of her medical record during this period of time reflects only that her requests for prescription medication refills were approved. Although Plaintiff contends that she "had no other sources of medical treatment other than what the tribal health care system would provide," Plaintiff's Brief, at 2, the record does not show that she persistently sought additional medical treatment from her medical providers other than medications, which were dispensed merely upon her request and without any contemporaneous objective findings.

The record does not contain a definitive diagnosis of fibromyalgia after physical examination or testing. See Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)("[T]he only symptom that discriminates between [fibromyalgia] and other diseases of a rheumatic character [are] multiple tender spots, more precisely 18 fixed locations on the body . . . that when pressed firmly cause the patient to flinch."). Plaintiff's treating physician, Dr. Davis, noted in May 2002 that Plaintiff complained of pain in several areas, including her left

shoulder, neck, left upper arm, wrist, forearm, hands, and feet, recurring daily and sometimes requiring her to stay home and use a heating pad for relief. (TR 181). Dr. Davis noted a provisional diagnosis of musculoskeletal pain of an unclear origin, but "may be a combination of fibromyalgia and some degenerative arthritis." (TR 181). The doctor prescribed anti-inflammatory, muscle relaxant, pain, and anti-anxiety medications. (TR 181). Although Plaintiff reported to Dr. Davis in July 2002 that her hands show bluish discolorations and she had "a history of fibromyalgia in her hands," Dr. Davis noted that Plaintiff's hands exhibited no swelling or discoloration, intact pulses, no localized tenderness, and good range of motion. (TR 179-180). He noted Plaintiff could possibly have carpal tunnel syndrome but that any change in her skin color had no real significance. (TR 179). Dr. Davis subsequently noted a diagnosis in June 2003 of chronic neck and shoulder pain, for which medications were prescribed. (TR 171).

In April 2003, Plaintiff sought treatment at an Indian Health Services clinic where she reported a history of previous diagnoses of fibromyalgia , ligamentous laxity and instability of her shoulders, polysubstance abuse, and depression. (TR 200). In February 2004, an examiner at her treating clinic noted she exhibited full range of motion in her upper extremities. (TR 197). At a different Indian Health Services clinic visited by Plaintiff in November 2003, Plaintiff reported a history of fibromyalgia for two years and requested pain medication for left shoulder pain. (TR 247). Pain medication was prescribed, but no objective findings are included in this office note. (TR 247). In February 2004, Plaintiff reported to her treating clinic that she was attending physical therapy at another clinic and

that the therapy was providing relief. (TR 241). Further, the record shows that a cervical spine x-ray of Plaintiff conducted in March 2004 was negative. (TR 308).

In examinations conducted in March 2004 and May 2004, Plaintiff exhibited normal range of motion of her neck and upper extremities. (TR 275, 276). In June 2004, her treating clinic examiner noted she exhibited full range of neck motion and she reported she was feeling better. (TR 238). In September 2004, Plaintiff reported she was working out with weights. (TR 268). Plaintiff exhibited full strength in both upper extremities in an examination conducted in November 2004. (TR 222). She was advised to do stretching exercises for her left arm pain. (TR 222). In January 2005, her treating clinic examiner noted Plaintiff was distraught because her older son was seeking custody of her younger son, and she was counseled to stop using marijuana. (TR 216). In April 2005, Plaintiff requested a note stating she could wear a brace at work for hand pain in her new job as a blackjack dealer. (TR 205). Her treating clinic examiner noted she was advised that she would no longer be prescribed controlled substances if a drug test was positive for illegal substances. (TR 205). Plaintiff did not return for her next scheduled appointment in May 2005. (TR 203). In April 2005, Plaintiff sought treatment at a different Indian Health Services Clinic where the examiner noted she provided a history of a diagnosis of fibromyalgia but she exhibited full range of motion of both upper extremities and no pain. (Exhibit No. 8F, at 57 of 70).

In June 2005, Plaintiff requested a note from her treating clinic examiner in order to take time off of work due to low back pain. (Exhibit No. 8F, at 50 of 70). Six days later,

Plaintiff requested a note releasing her to return to work, indicating her back pain had improved. (Exhibit No. 8F, at 49 of 70). In September 2005, Plaintiff was prescribed pain medication for her report of "chronic headaches." (Exhibit No. 8F, at 32 of 70).

In a consultative physical examination conducted by Dr. Davis on March 1, 2006, Dr. Davis reported the examination findings were normal, including full range of motion, normal heel and toe walking, good grip strength in both hands, stable gait, and no tenderness except "around the bra line." (TR 310-316). Dr. Davis's report of his examination includes no diagnosis other than Plaintiff's subjective statements of impairments "by history." (TR 310-316). There are no medical records of physical therapy treatments on or after the date that Plaintiff alleged she became disabled. In July 2006, Dr. Fried noted that Plaintiff was prescribed pain and muscle relaxant medications for "chronic low back pain," but no objective findings of limitations appear in the office note. (TR 427). Plaintiff's treatment records from December 2006 through October 2007 reflect only refills of medications and no objective findings other than a report of an eye examination (TR 437) and one report in September 2007 in which Plaintiff complained of headaches and leg numbness. (TR 463). The examiner noted Plaintiff's legs exhibited normal pulses and temperature and she was diagnosed with anxiety and chronic myofascial pain. (TR 463).

The ALJ's credibility determination is well supported by the record, and the credibility determination should not be disturbed.

V. RFC

Plaintiff contends that the ALJ's finding that she is capable of performing her previous

jobs as a beer server, typist, and human resource specialist is not supported by substantial evidence and that the ALJ did not follow the requirements of Social Security Ruling 82-62. The ALJ found that Plaintiff had the RFC to perform semi-skilled, light work that does not involve more than occasional postural changes and does not require more than simple to detailed, or not complex, job instructions. (TR 14). In light of this RFC for work and relying on the VE's testimony regarding the availability of jobs for an individual with Plaintiff's RFC, vocational characteristics, and past relevant work, the ALJ found that Plaintiff could perform her previous jobs as a beer server, typist, and human resource specialist. (TR 16). However, in explaining this finding, the ALJ noted in her decision that the VE had testified that an individual with this RFC for work could perform Plaintiff's past relevant work as a beer server, typist, and card dealer but could not perform her past relevant work as a human resource specialist. (TR 16). The ALJ stated in her decision that "[i]n comparing the claimant's [RFC] with the physical and mental demands of [her past relevant] work, the undersigned finds that the claimant is able to perform her past relevant work as a beer server, typist, and card dealer as it is actually and generally performed." (TR 16).

The ALJ's decision contains an inconsistency between the step four finding of an ability to perform three previous jobs, including the job of human resource specialist, and the ALJ's explanation of this finding which points out, correctly so, that the VE excluded the job of human resource specialist based on the RFC finding. (TR 16). The VE testified that a hypothetical individual with Plaintiff's RFC for work and vocational characteristics could not perform Plaintiff's previous job as a human resource specialist because that job requires

"complex" and "not simple" job tasks. (TR 54). Although the ALJ initially identified the human resource specialist job as a job within Plaintiff's RFC for work, the ALJ subsequently included in the decision the express finding that Plaintiff's RFC for work does not prevent her from performing her previous jobs as a beer server, typist, and card dealer. (TR 16). This finding is consistent with the VE's testimony. (TR 53). The ALJ's obvious inadvertent or typographical error in the initial step four finding does not warrant reversal or remand as the ALJ's subsequent step four finding corrects the error and includes the appropriate finding of the availability of work that is well supported by the VE's testimony.

As the Plaintiff points out, the VE testified that a card dealer job is skilled work. (TR 51). However, the VE also testified that an individual with Plaintiff's RFC work and vocational characteristics could perform her previous jobs as a beer server, typist, and card dealer because the card dealer job required only "simple and not complex" job tasks. (TR 53). Plaintiff has not demonstrated that this testimony was erroneous. Thus, there is substantial evidence in the record to support the ALJ's finding that Plaintiff's RFC for work would not prevent her from performing her previous job as a card dealer.

Plaintiff also complains that the ALJ did not consider her part-time job as a cashier. No error occurred in this respect. Plaintiff has not shown how ALJ's omission of this part-time job detracts in any way from the sufficiency of the evidence supporting the finding that Plaintiff is capable of performing three of her previous jobs despite her severe impairments.

Plaintiff contends that the ALJ's RFC finding did not adequately consider the limitations imposed by Plaintiff's anxiety disorder. However, the RFC finding included

restrictions in the complexity of the job tasks that Plaintiff could perform. Plaintiff has not demonstrated that this restriction did not fully accommodate any limitations imposed by Plaintiff's anxiety disorder, which the ALJ found imposed moderate limitations in Plaintiff's ability to concentrate. The ALJ compared Plaintiff's RFC with the specific demands of her past relevant work, as required by Social Security Ruling 82-62, 1982 WL 31386, and no error occurred in this regard. Because the ALJ's step four finding of nondisability are supported by substantial evidence in the record, the Commissioner's decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before May 11th, 2011, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

ENTERED this ____22nd________ day of ____April_______, 2011.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE